FILED & JUDGMENT ENTERED
David E. Weich

Sep 10 2008

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROBERT JOSEPH YATKO and, ) | Case No. 07-31456 |
| VALERIE ANN YATKO, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| A. BURTON SHUFORD, *Trustee in* ) | Adversary Proceeding |
| *Bankruptcy for Robert Yatko and Valerie* ) | No. 08-3028 |
| *Ann Yatko,* ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| CITIZENS SOUTH BANK, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**A HEARING** was held July 31, 2008 on the Plaintiffs' Motion for Summary Judgment. Defendant Citizens South Bank Corporation was represented by David W. Smith. The Plaintiff/Trustee A. Burton Shuford represented himself.

The parties submit there are no facts in dispute and agree this action may be decided on summary judgment as a matter of law. Those undisputed facts follow:

1

1. The Robert and Valerie Ann Yatko ("Yatko's") filed a Chapter 13 petition with this Court on July 22, 2007. The case was converted to Chapter 7 on November 27, 2007.

2. Upon conversion, Plaintiff A. Burton Shuford was appointed Trustee for the Yatko's bankruptcy estate ("Shuford").

3. Defendant Citizens South Bank Corporation (the "Bank") is a Delaware Corporation licensed to do business in North Carolina.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. This adversary proceeding is considered a "core" proceeding under 28 U.S.C. § 157.

5. This adversary proceeding also relates to another district bankruptcy case, that of Deertrack Development Company, Inc., Case No. 06-31080 ("Deertrack"). Deertrack was a real estate development company owned by Robert Yatko. Those efforts failed, and Deertrack filed a Chapter 7 case in July 10, 2006. Stanley M. Campbell ("Campbell") was appointed Chapter 7 Trustee for Deertrack Development.

6. As the Deertrack bankruptcy case was proceeding, Citizens South was simultaneously pursuing a collection action against the Yatko's (and others) in Gaston County Superior Court. *See Citizens South Bank v. Wren Homes, Inc., Robert J. Yatko and Valeria A. Yatko*, 06 CVS 2917. On November 13, 2006, the Bank obtained a judgment against the Yatkos et. al. of $163,634.25, plus attorney's fees of $24,545.14.

7. Deertrack owned a number of residential building lots located in Gaston County, North Carolina. In January 2007, Campbell liquidated these lots, thereby generating sufficient funds to pay all administrative expenses of the bankruptcy case and

all filed unsecured claims of Deertrack creditors.  It appeared that a significant amount of money would be left at the end of the day for shareholders, meaning Robert Yatko.   The Trustee's Final Report and Account would not be filed until November 26, 2007; however, that prospective surplus attracted the Bank's attention.

8.  In the supplemental proceedings following the entry of the State judgment against the Yatko's, the Bank obtained an Order from the Clerk of Superior Court forbidding the Yatkos from disposing of any property coming within their possession, including but not limited to the prospective Deertrack distribution.  *See* Order dated April 20, 2007 ("the Clerk's Order").

9.   In the same proceeding, on June 7, 2007, the presiding Superior Court Judge entered an Order in Aid of Execution (the "June 7 Order").  The June 7 Order purported to attach Robert Yatko's equity claim against Deertrack's Chapter 7 estate and  further directed Campbell, the Deerfield Chapter 7 Trustee, to turnover "whatever dividend or amount is otherwise payable to Robert J. Yatko as a judgment creditor" to the Bank.

10.  Attempting to touch all the bases, a few weeks later, the Bank would file an unsecured proof of claim for  $188,179.39 claim in the Deertrack bankruptcy case.

11.  On July 22, 2007, the Yatkos filed their own bankruptcy case on July 22, 2007, under Chapter 13.  This is the current case.

12.  Meanwhile in the Deertrack case, on July 27, 2007, Campbell, filed a motion to determine claims, preparatory to making a case distribution.  Campbell sought to disallow the Bank's claim, given that Deertrack (as opposed to Yatko) was not indebted to the Bank.  The objection was heard on October 9, 2007.  With the Deertrack case ready

3

to close, and the Yatkos' case only beginning, the Deertrack equity distribution question was moved into the Yatko's Chapter 13 case. The Deertrack Trustee paid the prospective equity distribution to the Yatko' Chapter 13 Trustee to hold pending further orders. *See* Order dated October 9, 2007.

13. On November 27, 2007 the Yatkos Chapter 13 case was converted to Chapter 7. Shuford was appointed Trustee for the Yatko estate, and as the successor to the Chapter 13 Trustee took possession of the equity distribution monies. Shuford then initiated this complaint against the Bank to determine entitlement to the Deertrack equity monies.

## PARTIES' POSITIONS

Notwithstanding the State Court Orders, Shuford considers the Bank to be nothing but an unsecured creditor of the Yatkos. He maintains the Bank has failed to demonstrate compliance with North Carolina state law prerequisites for attachment of the Deertrack equity distribution, and, therefore, has failed to bear its burden of demonstrating secured status.

Even had the Bank's attachment efforts complied with State law, Shuford argues that in attempting to garnish, or direct Campbell's case distribution, the State Court order (basically the Bank, who sought the order) violated the automatic stay of 11 U.S.C. § 362(a) as well as the well established legal doctrine that a trustee cannot be sued in a foreign court without leave of the appointing bankruptcy court.

4

Finally, the Trustee argues that even had the June 7 Order afforded the Bank a lien,[1] the creation of such a lien one month before bankruptcy would be an avoidable preferential transfer, under 11 U.S.C. § 547(b).

The Bank, while unable to supply specific legal authority supporting its position, nevertheless believes the June 7 Order was sufficient to create a lien interest in its favor. And, while the Bank acknowledges the creation of such a lien this close in time to the Yatko's bankruptcy filing would likely constitute a preference, it points out that no such action has been filed.

## DISCUSSION

The fundamental premise underlying the Bankruptcy Code is that a Debtor's limited assets will be distributed equally among creditors. *In re Merry-Go-Round Enterprises, Inc.,* 180 F.3d 149 (4th Cir. 1999). Accordingly, when an individual creditor, like the Bank, seeks to take estate assets to the exclusion of other creditors, the Bankruptcy Code places on them the ultimate burden of proof to demonstrate both entitlement to a claim and to secured status.[2] 11 U.S.C. § 502; 11 U.S.C § 506; *In re Karriem El-Amin Shabazz*, 206 B.R. 116, 120 (Bankr. E.D. Va. 1996).

The parties have stipulated that the Clerk's Order did not attach or otherwise impress the Deertrack Distribution with a lien or any other form of security in favor of the Bank. Their dispute, such as it is, is whether the June 7 Order did.

**I.     Under North Carolina State Law, the June 7, 2007 State Court Order Did Not Create a Lien on the Deertrack Equity Distribution.**

---

[1] Both parties agreed that the earlier Order directing the Yatkos not to dispose of their assets did not create a lien or otherwise cause an attachment of this stock interest.

[2] The Bank's filing of an unsecured proof of claim for $188,179.39 in the Deertrack bankruptcy case is considered acknowledgement of the existence of an unsecured rather than secured claim as against that estate.

The legal theory underlying the June 7, 2007 Order of the Superior Court is ambiguous. Apart from the title, discussed below, the June 7 Order does not cite any particular statute or other legal authority in support of the directive to the bankruptcy Trustee. Shuford treats that Order as being an attempt to use the North Carolina statutory remedies of attachment and garnishment against intangible property of Robert Yatko, meaning the prospective Deertrack equity distribution.[3] However, based upon its title, "Order in Aid of Execution," one could easily read the June 7 Order to be a Supplemental Proceeding Order under Article 31 of the General Statutes, particularly N.C. GEN. STAT. §1-360.

Either way, it doesn't appear that the Bank successfully adhered to the statutory requirements necessary to create a lien against the Deertrack distribution.

*A. The Order Does not meet the requirements for a State law Garnishment.*

Attachment is an ancillary proceeding to a pending principal action, akin to a preliminary execution against property. N.C. GEN. STAT. §1-440.1. It is intended to bring a defendant's property within the custody of the (state) court so that it may subsequently be applied to any subsequent money judgment rendered. *Id*. Attachment is available to a North Carolina creditor in enumerated cases, including actions seeking to secure a money judgment. N.C. GEN. STAT. §1-440.2. The Bank's collection action against the Yatko's appears to qualify.

Garnishment is an ancillary remedy to attachment that serves, among other things, to subject to attachment intangible personal property belonging to the defendant or any indebtedness owed to him by another. N.C. GEN. STAT. §1-440.21. Execution of an order

---

[3] Given the unusual manner of pursuing the Deertrack distribution, we will refer to attachment and garnishment together, as "attachment," unless otherwise noted.

6

of attachment or a garnishment on intangible personal property or any indebtedness to the defendant is effected by the Sheriff levying on the defendant's property under the garnishment procedure found at §1-440.25. N.C. GEN. STAT. §1-440.15.

Section 1-440.25 contemplates a levy by the Sheriff delivering to the garnishee, or his legal agent, garnishment process consisting of a copy of (a) the order of attachment (containing information about the action, court, bond, etc.)(§1-440.12)), (b) a summons (§1-440.23), and (c) a notice of levy (§1-440.24). N.C. GEN. STAT. §1-440.25. The summons hails the garnishee into court to answer or that failing to be adjudged liable for the defendant's debt. The Sheriff is also obliged to make a report to the court and a return of the process including the results of the levy. N.C. GEN. STAT. §1-440.16(b).

An exception to the §1-440.25 method of levy applies where the asset to be garnished is a stock interest. N.C. GEN. STAT. §1-440.19. In such a situation, the statute contemplates a levy by either (a) the sheriff seizing the stock certificate from the defendant or (b) delivering the garnishment process to a proper officer or agent of the corporation.[4] *Id*.

Upon levy against personal property, the lien created by attachment is perfected. *In re Millersberg*, 61 B.R. 125 (Bankr. E.D. N.C.1986) (citing N.C. GEN. STAT. §1-440.33(c)); *Edwards v. Brown's Cabinets*, 63 N.C. App. 524, 528, 305 S.E.2d 765, 768 (N.C. Ct. App. 1983).

---

[4] In this judicial district, the second option may not suffice. A reported decision of the U.S. District Court appears to require that the Sheriff seize, or at least account for the share certificates themselves. *See Medoil Corp. v. Clark*, 751 F. Supp. 88 (W.D. N.C. 1990)

7

In our case, Yatko's prospective Deerfield distribution could either be considered a stock interest under 1-440.19[5] or a debt owed to him under §1-440.25. The result would not change. Shuford argues, and the Bank does not disagree, that a levy never occurred. There is no evidence in this record that might demonstrate even substantial compliance with the state attachment and garnishment statutes. There was apparently no notice of levy, summons to the garnishee, nor a return of service.[6] In fact, there is no suggestion that the Sheriff was even involved. There is also nothing in this record suggesting whether Yatko's original Deerfield stock certificates were in his possession or even in state. The only thing we do know is that Campbell, the Deertrack Trustee, received from some source an Order in Aid of Execution purporting to attach the Yatko case distribution.

Since attachment and garnishment are statutory remedies, a court is obliged to strictly construe them. The lack of a proper levy of the necessary garnishment process would appear fatal to the Bank's position, without more. *Connolly vs. Sharpe,* 49 N.C. App. 152, 270 S.E.2d 564 (N.C. Ct. App. 1980).

> B. *The June 7 Order Does not meet the requirements for a Supplemental Proceeding Execution on Property of a Debtor of the Judgment Debtor.*

Although the parties approached this as an attachment case, after looking at the June 7 Order and the circumstances under which it was entered, it seems more likely that this order was intended to be a supplemental proceeding order under Article 31 of the State Rules of Civil Procedure.

---

[5] Since Deertrack is in bankruptcy, the bankruptcy trustee appears to substitute for a corporate officer for levy purposes under N.C. GEN. STAT. §1-440.19.

[6] The attachments to the bankruptcy adversary Complaint and the Summary Judgment motion contain only an Order in Aid of Execution without any indication of service, levy etc. The Bank did not object to the Trustee's assertions that the Sheriff didn't levy on the property, so we assume from its silence that this is the case.

Article 31, entitled "Supplemental Proceedings," contains a number of statutory provisions pertaining to the collection of state judgments. Among them are found N.C. GEN. STAT. §1-352 & 1-353, permitting discovery of the judgment debtor's assets by various means, including taking the judgment debtor's deposition. Other supplemental actions permitted by the statutes include forbidding the debtor to transfer his property (N.C. GEN. STAT. §1-358), executing on property of the debtors of the judgment debtor (N.C. GEN. STAT. §1-360.1), or even appointing a receiver to sue these persons. (N.C. GEN. STAT. §1-363).

In our case, before the June 7 Order was issued, the Bank had already (1) unsuccessfully attempted execution against the Yatko's, (2) deposed them about their assets and (3) obtained the order from the Clerk directing these judgment debtors not to transfer their assets. Given this, as well as the Order's title, ("Order in Aid of Execution,") it appears that the June 7 Order was an Article 31 directive.

However, even under these provisions, the Bank fares no better. Under the Supplemental Proceeding Rules, in order to require Campbell to answer as a 'debtor of the judgment debtor,' meaning Robert Yatko[7], it would first be necessary to require him to appear before the state court to answer concerning the same. N.C. GEN. STAT. §1-360. Presumably, notice to the Yatko's would also be required. *Id.* Then, the Clerk would have to issue execution against Campbell, as the debtor of the judgment debtor. None of these requirements were satisfied. Thus, even under Article 31, no lien was created in favor of the Bank.

---

[7] Assuming for the moment that it is this and not an ownership interest in a corporation.

As we will see, the Bank had a good reason to refrain from taking those steps. To do so, the bank would have run afoul of the bankruptcy laws applicable to the Deertrack case.

**II.    An Order by a State Court Directing A Chapter 7 Trustee by a North Carolina State Law Garnishment, Attachment or Supplemental Proceeding Would Violate the Bankruptcy Laws, Specifically 11 USC 362 (a), 28 USC 1334(a & e) and 28 USC 959(a),**

As above, it does not appear that the June 7 Order constituted an enforceable attachment, garnishment or supplemental proceeding under North Carolina law.

However, if it did, Shuford contends that the order, by attempting to impose a lien on the Deertrack estate or directing its bankruptcy trustee in how to distribute those monies, would violate (1) the automatic stay, (2) the Bankruptcy Court's exclusive jurisdictional grant over a debtor's case and property, and (3) 22 U.S.C. §959(h) (as an unauthorized suit against the Trustee in a foreign court).

From the Bank's perspective, the June 7 Order was simply a cautious attempt to achieve a legitimate state law result, attachment of a judgment debtor's property, without offending these federal principles. I am sure this is true. However, at least on a technical basis, I agree with Shuford that the June 7 Order crossed the line into a protected area.

A.    *Other Case Authority*

There is preciously little case law under the Code as to whether a judgment creditor of a bankruptcy case creditor can attach his claim or garnish monies owed him from the bankruptcy estate. Neither of our parties was able to identify any case law pertaining to the issue. The Court's research only disclosed two cases, and they disagree with each other.

10

One case, following the practice under the Bankrupt Act, concludes that attachment and garnishment by a foreign court over monies held by the bankruptcy trustee interferes with the administration of the bankruptcy estate and is not permitted. *See In re Ocean Downs Racing Association, Inc.*, 164 B.R. 249, 254-56 (Bankr. D. Md. 1993). The only other case, an unpublished decision, *In re Brickell*, 292 B.R. 705, 709 (Bankr. S.D. Fla. 2003), *aff'd*, 142 Fed. Appx. 385 (11th Cir. 2005) goes the other way, permitting garnishment on the trustee although not automatically and not in all circumstances.

There is merit to both positions. Certainly a judgment creditor of a creditor of a bankruptcy debtor should have some method by which it can attach its judgment debtor's right to a distribution from a bankrupt case. On the other hand, subjecting the Trustee to attachment orders potentially causes problems for the trustee and the estate.

B,      *The Automatic Stay/Exclusive Subject Matter Jurisdiction.*

The intent of the bankruptcy laws is to marshal a debtor's assets and all of the claims against him and those assets into a single forum where they may be reviewed, weighed against one another, and to the extent possible, paid. *Freedom Bus. Brokers v. Yolanda Trlin, Deal Transp., Inc.,* 2003 WL 21976073, 1 (N.D. Ill. 2003)

To this end, Congress in enacting the Bankruptcy Code, gave exclusive jurisdiction over the debtor's bankruptcy case (28 U.S.C. § 1334(a)) and his property (28 U.S.C. § 134(e)) to the U.S. District Courts. That subject matter jurisdiction has been passed on to the Bankruptcy Courts, with a few limitations not relevant here.

The Bankruptcy Code also contains a comprehensive scheme of how those assets are to be weighed out among the competing claims. *See* Title 11, U.S. Code. In order to

11

allow for this sifting process to occur, the Code automatically stays a variety of independent creditor actions, which might, by their nature, prove to be injurious to the effort. *See* 11 U.S.C. § 362(a).

Among other things, section 362 stays creditor actions seeking to obtain possession or control estate property (§ 362(a)(3)) and to create, perfect or enforce liens against estate property (§ 362(a)(4). Actions violative of the automatic stay are at a minimum voidable, if not entirely, void. *See Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (1st Cir. 2003); *Bronson v. United States*, 46 F.3d 1573, 1578 (Fed. Cir. 1995).

Shuford is correct in his assertion that the Bank, by obtaining an order directing the distribution of monies of the Deertrack bankruptcy estate, probably violated the automatic stay. The June 7 Order, read broadly could also be considered to be an encroachment on the exclusive federal subject matter over the bankruptcy estate and over decisions such as 'who gets what monies out of an estate' and 'when they get it.'

However, the limited reach of the June 7 order (there are no time limits for complying with that directive, threats of liability or sanctions if they are not adhered to, nor a demand for an answer, testimony or an accounting), makes this violation more technical than willful. It appears simply to be an attempt to protect the Bank against a potential dissipation of the Deertrack equity distribution by Robert Yatko. No real attempt is made to coerce the Trustee or to exercise control over the bankruptcy estate.

> C. *North Carolina state law Attachment, Garnishment, or a 1-366 Supplemental Proceeding brought against the bankruptcy Trustee without leave of court would also violate 28 USC § 959(h) as an unauthorized suit against the Trustee in a foreign court.*

12

Just as subject matter jurisdiction over the bankruptcy case and the property of that estate lies in federal court, so too, the bankruptcy trustee is a creature of the federal system. He is appointed, directed, and is answerable to others in the appointing bankruptcy court. Consequently, with only one exception not relevant to our case,[8] "leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *In re DeLorean Motor Co.*, 991 F.2d 1236 (6th Cir. 1993).

This principle, derived from 28 U.S.C. § 959, is designed to protect property of the estate, such that "it is immaterial whether the suit is brought against [the trustee] to recover specific property or to obtain judgment for a money demand." *Id*. at 1240.

Given the nature of attachment/garnishment and supplemental proceedings, at least under North Carolina law, when a party seeks to treat the bankruptcy trustee as the "garnishee" or the "debtor of the judgment debtor," he is effectively hailing the bankruptcy trustee into state court to answer for the assets ostensibly held for (or owed to) the judgment debtor.

Should the Trustee fail to answer, or should his explanations be deemed inadequate by the state tribunal, the statutory provisions generally make him liable for the debt. N.C. GEN. STAT. §1-440.27, 1-440.29. Some of these also subject him to contempt citations as well. N.C. GEN. STAT. §1-440.24.

Under North Carolina law, a garnishment is effectively a lawsuit against the garnishee to recover the debt due to the plaintiff by the defendant. *Goodwin v. Claytor*,

---

[8] 28 U.S.C. §959 permits a suit against a trustee in another forum without leave of court only where he is operating a business.

135 NC 224, 49 S.E. 173 (1904).  So too are supplemental proceedings. N.C. GEN. STAT. §1-440.24.  Therefore, notwithstanding the Bank's attempt not to put demands on the trustee other than to pay the Bank and not Yatko, the June 7 Order runs afoul of 28 U.S.C. § 959.

If such leave had been sought by the Bank in order to take this action, and assuming safeguards were put in place to limit the cost and disruption to the bankruptcy estate, the request would likely have been granted.  And again, this court appreciates the State Court's sensitivity to these concerns.

However, on the question presented here, I must agree with the Trustee. A garnishment, attachment or supplemental proceeding against the bankruptcy trustee cannot be maintained without relief from stay and/or prior leave of the appointing bankruptcy court.  Because this was not granted, the action was void and could not give rise to a lien in the Bank's favor, even if the state requirements were met.

### III. Even if the June 7 Order Created a Lien in Favor of the Bank, It would be Subject to a Section 502 Claims Block as a Likely Section 547 Preference.

Finally, the Trustee argues that had the June 27 Order of Attachment given rise to a lien, that lien would be an avoidable preference under Code section 547. The Bank would end up as an unsecured non-priority creditor in the Yatko case.

Code section 547 allows the trustee to avoid transfers of an interest in a debtor's property that occur within 90 days of the bankruptcy filing date which enable the creditor would receive more then he would have had the transfer not been made but instead the case had been filed under Chapter 7.  11 U.S.C. § 547.

The trustee's point is that if the June 7 Order gave rise to a lien in favor of the Bank, that lien would be a transfer of an in rem property interest in Robert Yatko's property one a month before bankruptcy.  The transfer would be to the detriment of other unsecured creditors; thus, it would be avoidable.

14

The Bank recognizes the strong likelihood that any such lien would fall to a preference attack. It simply argues that it hasn't yet been attacked.

This is true, of course. In order to avoid a preferential transfer, the Trustee must in fact file an adversary proceeding. *See* FED R. BANKR. P. 7001. And of course, his current action doesn't contain a section 547 count.

However, under 11 U.S.C. § 502d, this Court is required to disallow any claim of any entity from which property is recoverable under the Trustee's Chapter 5 avoiding powers, including the § 547 preference provision. The case law under Section § 502(d) generally recognizes that the section 502 claims block applies even where a § 547 reference has not been filed, and even in cases where such an action would be barred by the section 546(a) statute of limitations. *In re Badger Lines, Inc.*, 206 B.R. 521, 527 (E.D. Wis. 1997); *In re McClain Indus., Inc.*, 196 B.R. 670 (S.D. N.Y. 1996); *In re Alamance Knit Fabrics, Inc.*, 2000 WL 33673789 (Bankr. M.D. N.C. 2000); *In re Romano* 175 B.R. 585 (Bankr. W.D. Pa. 1994).

Again, the bank can't get a superior claim to the monies held by Shuford, on account of Robert Yatko's stock interest in Deerfield.

———————

For all of these reasons, I conclude the Bank should be treated as a non-priority unsecured creditor of the Yatko debtors in this bankruptcy case. The Deerfield equity distribution funds, currently held by Shuford, should be deposited in the estate's bank account and treated as a part of Robert Yatko's bankruptcy estate. The Trustee's motion for summary judgment is therefore **GRANTED.**

**SO ORDERED.**

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**                          **United States Bankruptcy Court**

15

16